## THE UNITED STATES OF AMERICA vs. WILLIAM MOORE, JOHN DUFFEY and JOHN ROONEY.

### May 11, 1906.

*Federal Courts—Rules of evidence in criminal cases*: "The rules of evidence governing federal courts in criminal trials are those which were in force in the state at the time such courts were established therein, subject to such changes as have been made by Congress, and are not changed by subsequent state enactments." (*Withaup v. United States,* 127 Fed. Rep. 530). In the Territory of Hawaii such rules are those which were in force in the Republic of Hawaii at the time it was organized as a Territory and created a federal district.

*Same—Competency of witness convicted of infamous crime:* At the time Hawaii was created a Territory of the United States, the local rules of evidence permitted all persons to testify except those convicted of perjury or subornation of perjury; *held,* that the same rule applies to the District Court of such Territory in criminal cases.

*Same:* Such practice supported by the American statutory rule (1 U. S. Stat. L. 116) disqualifying persons convicted of perjury and subornation of perjury.

*Criminal Law*:   Question of admission of certain testimony.

*J. J. Dunne,* Ass't. U. S. District Attorney, for the Government.
*W. T. Rawlins,* for Defendant Moore.
*L. M. Straus,* for Defendant Duffey.

DOLE, J.   Counsel for defendants objected to a witness called by the prosecution on the ground that he was serving a sentence for the commission of an infamous crime, and contended that he was thereby incompetent under United States decisions.   The Hawaiian laws provide, by an enactment made in 1876 and still in force (Revised Laws of Hawaii, 1905, sec. 1947), that "no person offered as a witness shall hereafter be excluded by reason of incapacity from crime (perjury and subornation of perjury only excepted)."   The common law rule excludes all persons from testifying who have been convicted of an infamous crime.   Which of these rules governs the action of this court on this question?

The provision of section 858 of the Revised Statutes, referred to on this question, is as follows: " In all other respects [referring to the previous portions of such section] the laws of the State in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, and in equity and admiralty."   This is substantially the enactment of July 16th, 1862.   The court in *Logan v. United States,* 144 U. S. 263, 303, citing the authority of *United States v. Reid,* 53 U. S. 361, 363, 366, decided that this rule had no reference to criminal procedure in federal courts, and held that "the competency of witnesses in criminal trials in the courts of the United States held within the State of Texas is not governed by a statute of the State which was first enacted in 1858, but, except so far as Congress has made specific provisions upon the subject, is governed by the common law, which, as has been seen, was the law of Texas before the passage of that statute and at the time of the admission of Texas into the Union as a State."

The court in *United States v. Reid,* supra, had occasion to consider the similar rule enacted as section 34 of the "Act to Establish the Judicial Courts of the United States," approved September 24th, 1789, in reference to its application to criminal trials in federal courts. The section in question is as follows:

" That the laws of the several States, except where the Constitution, treaties or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply."

The court ruled, pages 362-363, that the language of this section of the Act of 1789 "cannot, upon any fair construction be extended beyond civil cases at common law as contradistinguished from suits in equity," and it "was merely intended to confer on the courts of the United States the jurisdiction necessary to enable them to administer the laws of the States. But it could not be supposed, without very plain words to show it, that Congress intended to give the States the power of prescribing the rules of evidence in trials for offenses against the United States. For this construction would in effect place the criminal jurisprudence of one sovereignty under the control of another." The court goes on to say that although there is no "Act of Congress prescribing in express words the rule by which the courts of the United States are to be governed in the admission of testimony in criminal cases, * . * * we think it may be found with sufficient certainty, not indeed in direct terms, but by necessary implication, in the Acts of 1789 and 1790 establishing the courts of the United States and providing for the punishment of certain offenses. And the law by which in the opinion of the court the admissibility of testimony in criminal cases must be determined, is the law of the state as it was when the courts of the United States were established by the Judiciary Act of 1789."

The explanation of this conclusion, as stated by the court, is, briefly, that the different colonies which joined together to

form the United States under the Constitution, had already abolished in their own legislation, before the enactment of the Judiciary and Crimes Acts, certain offensive features of the common law relating to procedure in criminal cases. The makers of the Constitution neglected to incorporate within its enactments similar measures for the protection of the rights of persons charged with offenses against the United States. The Judiciary Act of 1789 (1 Stat. L., chap XX, p. 73) and the Crimes Act of 1790 (1 Stat. L., chap IX, p. 112), although enacting certain regulations in regard to juries, and the proceedings and right of peremptory challenge in criminal cases before the jury is empaneled, do not furnish rules as to the admissibility of testimony except as to the exclusion of persons convicted of perjury or subornation of perjury, yet it is obvious that some established rule was necessary to enable the courts to administer the criminal jurisprudence of the United States.

"And it is equally obvious that it must have been the intention of Congress to refer them to some known and established rule, which was supposed to be so familiar and well understood in the trial by jury that legislation upon the subject would be deemed superfluous.   *   *   *   This could not be the common law as it existed at the time of the emigration of the colonists, for the Constitution had carefully abrogated one of its most important provisions in relation to testimony which the accused might offer. It could not be the rule that at that time prevailed in England, for England was then a foreign country, and her laws foreign laws. And the only known rule upon the subject which can be supposed to have been in the minds of the men who framed these Acts of Congress, was that which was then in force in the respective states, and which they were accustomed to see in daily and familiar practice in the state courts."

The court says further, on page 365, "The law of evidence in this country, like our other laws, being founded upon the ancient common law of England, the decisions of its courts show what is our own law upon the subject where it has not been changed by statute or usage. But the rules of evidence

in criminal cases, are the rules which were in force in the respective states when the Judiciary Act of 1789 was passed. Congress may certainly change it whenever they think proper, within the limits prescribed by the Constitution. But no law of a state made since 1789, can affect the mode of proceeding or the rules of evidence in criminal cases."

Does the rule adopted in *United States v. Reid,* supra, apply to such other communities as have been admitted to the American system since the organization of the United States? The following expression among those quoted from *United States v. Reid,* is significant:

" The only known rule upon the subject which can be supposed to have been in the minds of the men who framed these Acts of Congress (the Judiciary and the Crimes Acts) was that which was then in force in the respective states, and which they were accustomed to see in daily and familiar practice in the state courts."

Such an argument would certainly apply to the case of a new community admitted to the sisterhood of states subsequent to the organization of the United States, where such community had already in use established rules of evidence in its criminal procedure. Judge Van Devanter in the Circuit Court of Appeals of the Eighth Circuit applies the principles adopted in *United States v. Reid,* to the status of Colorado in the case of *Wilhaup v. United States,* 127 Fed. Rep. 530. He says, pages 533-534:

"The territory embraced in the State of Colorado had not been acquired by the United States in 1789 and 1790, and was not admitted into the Union as a state until 1876. So there are here no known and established local rules in force in 1789 and 1790 which could have been contemplated by Congress when the judiciary and crimes acts were passed. When, however, Colorado was admitted into the Union as a state, it had known and established rules concerning evidence in criminal cases. An Act of the Territory of Colorado passed November 5, 1861, and in force at the time of the state's admission, declared the rules of evidence of the common law to be binding on all courts

and juries in criminal cases, save in some respects not here material. The acts of Congress under which the state was admitted made it a judicial district, established courts of the United States therein, and clothed them with criminal jurisdiction. To enable them to administer the criminal laws of the United States, it was essential that there should be some certain and established rules of evidence. Congress made no provision upon the subject, other than to declare that 'the laws of the United States not locally inapplicable shall have the same force and effect within the said state as elsewhere within the United States.' It is not material that there are here no known and established local rules in force in 1789 and 1790 which could have been contemplated by Congress when the judiciary and crimes acts were passed, for there was no purpose at that time, and could have been none, to make those acts operative in what is now the State of Colorado. But it is material that Colorado had known and established rules upon the subject at that time when those acts were subsequently fully extended to the new state, and given the same operation there which had been given to them in Virginia and other states at the time of their enactment. The situation incident to the admission of Colorado as a state, and the manner with which Congress dealt with it, were essentially the same as those shown in *United States v. Reid,* supra. Applying the principles of that decision, it is obvious that it was the purpose of Congress, save where it had legislated otherwise, or should do so in the future, to refer the courts of the United States in the new state to the known and established rules concerning evidence in criminal cases which were in force in Colorado at the time when the judiciary and crimes acts were given the same operation in that state as in other states, which was when Colorado was admitted into the Union as a state."

If the reasoning of this case is correct, it applies as well to the Territory of Hawaii as to the State of Colorado; for when Hawaii was admitted into the Union as a Territory "it had known and established rules concerning evidence in criminal cases," including the rule above cited, admitting all persons who had been convicted of crimes except perjury and subornation of perjury, to testify. The act of Congress under which it was admitted (act of April 30, 1900, 31 Stat. L., chap. 339,

sec. 86, p. 141), made it a judicial district and established a court of the United States therein, clothed with criminal jurisdiction. To enable it to administer the criminal laws of the United States, it was essential that there should be some certain and established rules of evidence. Congress made no provision on the subject other than to declare "that the Constitution, and, except as herein otherwise provided, all the laws of the United States, which are not locally inapplicable, shall have the same force and effect within the said Territory as elsewhere in the United States" (Id., sec. 5), and to continue in force the existing Hawaiian laws concerning evidence in criminal trials, including the law above referred to admitting all persons to testify except persons convicted of perjury and subornation of perjury. *Id.,* sec. 6.

I am disposed to accept the reasoning of Judge Van Devanter as applicable to the status of Hawaii upon its admission as a Territory. The policy expressed in the decision of *United States v. Reid,* also applies;—the rule in force in the respective states was that "which they were accustomed to see in daily and familiar practice in the state courts."

The fact of the enactment of the statute against perjury by Congress in 1790 (1 U. S. Stat. L., 116) which disqualified persons convicted of perjury and subornation of perjury from testifying, is interesting in this connection, for considering it in relation to the maxim *expressio unius est exclusio alterius,* it tends to support the contention of the prosecution that the witness objected to is not disqualified under American law, although I do not find that this provision has been commented on by the United States courts in relation to this question.

Under the foregoing considerations and authorities, the objection to the witness offered by the prosecution, is overruled.